**In the United States District Court
for the District of Kansas**

———————

Case No. 24-cv-02387-TC

———————

TC HULETT JR.,

*Plaintiff*

v.

HANNAH FOSTER ET AL.,

*Defendants*

———————

**MEMORANDUM AND ORDER**

TC Hulett Jr., proceeding pro se, brought various federal and state law claims against several county entities and employees after he was arrested at a public library. Doc. 1. The defendants moved to dismiss. Doc. 16. For the following reasons, their motion is granted.

**I**

**A**

Each ground on which the defendants seek dismissal has a different standard that governs its resolution. And Hulett's pleadings are subject to certain standards that apply only to pro se plaintiffs. The following describes each applicable standard.

**1.** The defendants assert that there is no personal jurisdiction over them because they were not properly served. Under Federal Rule of Civil Procedure 12(b)(5), a defendant may move to dismiss for insufficient service of process. When a defendant moves to dismiss under Rule 12(b)(5), the plaintiff has the burden "of establishing the validity of the service of process." *Fed. Deposit Ins. Corp. v. Oaklawn Apartments*, 959 F.2d 170, 174 (10th Cir. 1992).

1

Before personal jurisdiction may be exercised over a defendant, the plaintiff must have served process validly under Rule 4. *Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987); *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006) (indicating that proper service is an aspect of personal jurisdiction). Rule 4(e) sets forth the manners in which an individual defendant may be served. *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1210 (10th Cir. 2000). One way is to personally deliver a copy of the summons and the complaint to the individual, his or her agent, or a person of suitable age and discretion at the individual's residence. Fed. R. Civ. P. 4(e)(2)(A)–(C). The other is by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1).

District courts have broad discretion to determine the appropriate remedy when the plaintiff fails to effect proper service. 5B Wright & Miller, *Federal Practice & Procedure* § 1353 (4th ed. 2025). As a general rule, the appropriate remedy after the plaintiff's first attempt is to quash service rather than dismissing the plaintiff's claims. *Id.*; *Gregory v. United States/U.S. Bankruptcy Ct. for Dist. of Colo.*, 942 F.2d 1498, 1500 (10th Cir. 1991). Other remedies include dismissing the case without prejudice or extending the time for service. *See Scott v. Hern*, 216 F.3d 897, 912 (10th Cir. 2000).

**2.** The defendants also move to dismiss Hulett's claims under Rule 12(b)(6). A federal district court may grant a motion to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

To survive a motion to dismiss for failure to state a claim, the complaint need only contain "a short and plain statement . . . showing that the pleader is entitled to relief" from each named defendant. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Two "working principles" underlie this standard. *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). First, a court ignores legal conclusions, labels, and any formulaic recitation of the elements. *Penn Gaming*, 656 F.3d at 1214. Second, a court accepts as true all remaining allegations and logical inferences and asks whether the claimant has alleged facts that make his or her claim plausible. *Id.*

A claim need not be probable to be considered plausible. *Iqbal*, 556 U.S. at 678. But the facts, viewed in the light most favorable to the

claimant, must move the claim from conceivable to plausible. *Id.* at 678–80. The "mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

Plausibility is context specific. The requisite showing depends on the claims alleged, and the inquiry usually starts with determining what the plaintiff must prove at trial. *See Comcast Corp. v. Nat'l Assoc. of African Am.-Owned Media*, 589 U.S. 327, 332 (2020). In other words, the nature and complexity of the claim(s) define what plaintiffs must plead. *Cf. Robbins v. Oklahoma*, 519 F.3d 1242, 1248–49 (10th Cir. 2008) (comparing the factual allegations required to show a plausible personal injury claim versus a plausible constitutional violation).

**3.** These rules do not operate in a vacuum. When a plaintiff, such as Hulett, proceeds pro se, a court must construe his or her pleadings generously. *See Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009). That generosity means a court should overlook the failure to properly cite legal authority, confusion of various legal theories, and apparent unfamiliarity with pleading requirements. *Id.* But it does not permit a court to construct legal theories on the plaintiff's behalf or assume facts not plead. *See id.*; *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

## B

TC Hulett Jr. brought this civil rights action against several county entities and employees after he was arrested at a public library in August 2022. Doc. 1 at ¶ 9.[1] The individual defendants include five law-enforcement officers: Adam Gardner, Jesse Valdez, and three officers with unknown first names—Hunn, Drake, and Cristensen. *Id.* at ¶¶ 6, 7, 29. The other two county employees Hulett sued are Hannah Foster and Nathan Stavig, two emergency medical technicians who provided Hulett emergency medical treatment and transported him to a hospital after his arrest. *Id.* at ¶ 9. And the final two defendants are governmental entities: Olathe Booking Center and Johnson County, Kansas. *Id.* at

---

[1] All references to the parties' briefs are to the page numbers assigned by CM/ECF.

¶¶ 5, 8. It is not clear from the Complaint exactly what happened or in what order the alleged events took place. The following description, however, attempts to outline Hulett's allegations against the nine aforementioned defendants.[2]

On August 22, 2022, Hulett visited a public law library in Olathe, Kansas. Doc. 1 at ¶ 9. He was reading, studying, and using the library's resources to work on another lawsuit in which he was involved. *Id.* At some point, Hulett went outside and sat in front of the library's entrance. *Id.* While he sat there, Hulett observed officers from the Johnson County Sheriff's Office detain and arrest an unknown individual. *Id.*

The officers eventually arrested Hulett, too. Doc. 1 at ¶ 9. Hulett does not allege why the officers arrested him or how the encounter between him and the officers began. Hulett only broadly states that the officers "unlawfully detained, battered, searched and arrested" him after he expressed statements like, "This is a free Nation!" *Id.* Hulett further alleges that three officers—Drake, Cristensen, and Hunn—forced him "into a bounded area in the law library" and physically intimidated him. *Id.* at ¶ 11. The officers "painfully contorted and applied pressure to his wrist and shoulder, causing those areas of his body significant injury." *Id.* at ¶ 12. According to Hulett, those injuries caused him to have a panic attack requiring medical treatment. *Id.* Hulett states that the law-enforcement officers then collaborated to falsify a police report, which led to Hulett being charged for an unknown offense. *Id.* at ¶ 10.

Two emergency medical technicians—Hannah Foster and Nathan Stavig—arrived at the scene. Doc. 1 at ¶ 9. Hulett alleges that Foster "got mad and snatched" a blood-pressure cuff off his arm after he declined to sign a consent form. *Id.* Next, he alleges that Foster and Stavig intentionally falsified his medical records in an attempt to commit fraud. *Id.* And he says that Stavig threatened to call the police after Hulett stated facts about the legal requirements governing the provision of emergency medical services. *Id.* Foster and Stavig transported Hulett to Olathe Medical Center, where Hulett alleges that Stavig "went and got security and laughed at [him]." *Id.*

Based on these events, Hulett sued the defendants. Doc. 1. He seeks money damages for various alleged common-law and constitutional violations. *See generally id.* In particular, Hulett alleges that each of the individual defendants violated his First, Fourth, and Fourteenth Amendment rights, and that they conspired among each other to violate those same rights. *Id.* at 2, ¶¶ 1–4 (citing 42 U.S.C. §§ 1983 & 1988). And Hulett alleges that Johnson County and Olathe Booking Center violated his constitutional rights under a municipal-liability theory and by failing to train and supervise their employees. *Id.* at 2, ¶¶ 5–9. Hulett's final allegations are state-law claims against some or all of the defendants. *Id.* at 2, ¶¶ 7–12. Specifically, he alleges that some or all of the defendants are liable under state law for intentional infliction of emotional distress, healthcare fraud, defamation, assault, battery, state constitutional violations, conversion, and a violation of the Uniform Commercial Code. *Id.* at 2, 7. The defendants moved to dismiss all of Hulett's claims, making various arguments as to why Hulett failed to properly serve or state a claim against them. *See generally* Doc. 17.

## II

The defendants offer various reasons that Hulett's claims against them should be dismissed. They are considered in the following order. Section II.A. deals with the defendants' arguments that Hulett did not properly serve them. Section II.B. then addresses two of the defendants' arguments that they are not entities capable of being sued under Kansas law. Section II.C. considers Hulett's Section 1983 claims against all the defendants. Finally, Section II.D. evaluates Hulett's remaining state-law claims.

## A

The individual defendants and Johnson County assert that Hulett's claims against them should be dismissed for lack of personal jurisdiction because Hulett's attempt to serve them was improper. Doc. 17 at 3–4, 7–8; *see also* Fed. R. Civ. P. 12(b)(5). The record confirms their position. *See Albers v. Bd. of Cnty. Comm'rs of Jefferson Cnty., Colo.*, 771 F.3d 697, 702 n.6 (10th Cir. 2014) (explaining that a defendant does not waive an insufficient-service defense by asserting it in a motion to dismiss before filing a responsive pleading).

**1.** Consider Johnson County first. To serve a local governmental entity, a plaintiff may serve the municipality's chief executive officer, Fed. R. Civ. P. 4(j)(2)(A), or the plaintiff may follow the manner set

5

forth by the law of the state in which the municipality sits, Fed. R. Civ. P. 4(j)(2)(B). In Kansas, a plaintiff attempting to serve a county must deliver the complaint and summons to "one of the county commissioners, the county clerk, or the county treasurer." Kan. Stat. Ann. § 60-304(d)(1).

Hulett did not meet the requirements to serve a local governmental entity under Kansas law. He did not name any individual in his summons, let alone one of the three individuals that Section 60-304(d)(1) authorizes to receive service on the county's behalf. *See Towers v. Unified Gov. of Wyandotte Cnty.*, No. 24-4024, 2025 WL 2495319, at *5 (D. Kan. Aug. 29, 2025) (finding that the plaintiff's attempt at service was insufficient under Section 60-304(d)(1) where the plaintiff did not address service to any of the officials listed by the statute); *cf. Strong v. Laubach*, 371 F.3d 1242, 1248 (10th Cir. 2004) (finding the plaintiff's attempt at service was sufficient where the plaintiff served one of the individuals that state law authorized to accept service on a corporation's behalf).

Nor did Hulett attempt to serve the county at the offices where any of those three individuals work. Those offices are located at 111 South Cherry Street in Olathe, Kansas. *See Wanjiku v. Johnson Cnty.*, 173 F. Supp. 3d 1217, 1234 (D. Kan. 2016) (indicating the address of Johnson County officials' offices). Instead, the U.S. Marshals Service, using the address Hulett provided, sent the summons by certified mail to the Johnson County District Court at 150 West Santa Fe Street. Doc. 10 (listing the addresses Hulett provided for the defendants); Doc. 13-7 at 1 (indicating that the U.S. Marshals Service sent the summons to the address that Hulett provided). That is insufficient under Kansas law. *See Zesiger v. Leavenworth Cnty., Kan.*, No. 25-2322, 2025 WL 2710724, at *4 (D. Kan. Sep. 23, 2025) (applying Section 60-304(d)(1) to reach the same result); *Pemberton v. Patton*, 673 F. App'x 860, 864 (10th Cir. 2016) (citing *Johnson v. U.S. Postal Serv.*, 861 F.2d 1475, 1479–80 (10th Cir. 1988) (noting that "the Marshals Service is not responsible for lack of service where a plaintiff does not provide correct information required for service").

**2.** So, too, with the individual defendants. In Kansas, an individual may be served at his or her place of business if and only if two threshold requirements are met. Kan. Stat. Ann. § 60-304(a); *Fisher v. DeCarvalho*, 314 P.3d 214, 218 (Kan. 2013). First, service must be attempted at the individual's dwelling or usual place of abode. Kan. Stat. Ann. § 60-304(a). Second, the plaintiff must file a return of service stating

that residential service was refused or unclaimed and that there is a known business address where the individual may be served. *Id.*

Hulett has not met the requirements for business-address service. There is no indication or argument that Hulett attempted service at any of the individual defendants' residences or that he filed anything establishing that the residential service was refused or unclaimed. That constitutes a failure of service. *Fisher*, 314 P.3d at 218 (noting that a filing indicating that service was refused or unclaimed is one of the essential requirements of the statute); *Hukill v. Okla. Native Am. Dom. Violence Coal.*, 542 F.3d 794, 802 (10th Cir. 2008) (relying on the Oklahoma Supreme Court's most recent interpretations of the state's statute regarding service at an individual's residence to conclude that the plaintiff failed to comply with the statute's requirements); *Hulett v. AdventHealth Shawnee Mission*, No. 24-4040, 2025 WL 2495547, at *4 (D. Kan. Aug. 29, 2025) (dismissing Hulett's claims for the same reason).

\* \* \*

These service defects justify dismissal of all claims against these defendants. In some circumstances, a court might consider granting leave to afford a litigant an opportunity to effectuate proper service. *Gregory v. United States/U.S. Bankruptcy Ct. for Dist. of Colo.*, 942 F.2d 1498, 1500 (10th Cir. 1991) (internal citation and quotation marks omitted) ("The general rule is that when a court finds that service is insufficient but curable, it generally should quash the service and give the plaintiff an opportunity to re-serve the defendant."). That option is not available, however, when it would be futile. *See id.* In this case, permitting such an opportunity would be futile because, as explained below, Hulett failed to state a claim upon which relief may be granted. *Id.* (finding that allowing time for the plaintiff to effectuate proper service of process would be futile where the complaint was subject to dismissal under Rule 12(b)(6)); *accord Ngiendo v. Soc. Sec. Admin.*, 547 F. App'x 913, 914 (10th Cir. 2013).

**B**

Olathe Booking Center and Johnson County contend that all claims against them should be dismissed because they are not entities capable of suing or being sued under Kansas law. Doc. 17 at 6–7, 9–10. The defendants' position is sound.

7

**1.** Olathe Booking Center asserts that it is a subordinate government agency that lacks the capacity to be sued under Kansas law. Doc. 17 at 10. A municipality or a municipal agency's capacity to be sued is governed "by the law of the state where the court is located." Fed. R. Civ. P. 17(b)(3); *Arbogast v. Kan., Dep't of Labor*, 789 F.3d 1174, 1179 (10th Cir. 2015). The Kansas Supreme Court has held that "subordinate government agencies do not have the capacity to sue or be sued in the absence of statute." *Hopkins v. State*, 702 P.2d 311, 316 (Kan. 1985). Hulett has not identified any statute that would make Olathe Booking Center an entity with the capacity to be sued under Kansas law. As a result, his claims against it must be dismissed. *See Mayfield v. Harvey Cnty. Sheriff's Dep't*, 732 F. App'x 685, 688 (10th Cir. 2018) (finding a county sheriff's department was not an entity capable of being sued where the plaintiffs did not identify a statute giving it the capacity to sue or be sued); *Hulett v. Rodden*, No. 24-1090, 2025 WL 1555033, at *2 (D. Kan. June 2, 2025) (dismissing Hulett's claims against Olathe Booking Center for the same reason).

**2.** Nor can Johnson County be sued under Kansas law. Kansas law requires that "[i]n all suits or proceedings by or against a county, the name in which the county shall sue or be sued shall be 'The board of county commissioners of the county of _____.'" Kan. Stat. Ann. § 19-105; *Arbogast*, 789 F.3d at 1179 (noting that a municipality's capacity to be sued is governed by state law). Although the Tenth Circuit has not addressed this issue, complaints are frequently dismissed in the District of Kansas where a plaintiff attempts to sue a county by naming the county itself, rather than its board of county commissioners. *See Brantley v. Richards*, No. 18-2651, 2020 WL 2306634, at * 4 (D. Kan. May 8, 2020) (collecting cases). Because Hulett failed to name the board of county commissioners, his suit is subject to dismissal under K.S.A. § 19-105. *See, e.g.*, *Bennett v. Kansas*, No. 24-3127, 2024 WL 4264193, at *4 (D. Kan. Sept. 23, 2024) (noting that Johnson County, Kansas is not a proper entity that can be sued under Kansas law but dismissing the plaintiff's complaint on the ground that it failed to state a claim); *Hulett v. Rodden*, No. 24-1090, 2025 WL 1555033, at *2 (D. Kan. June 2, 2025) (noting that Hulett's claims against Johnson County were subject to dismissal for this same reason).

## C

Invoking 42 U.S.C. § 1983, Hulett seeks damages for alleged First, Fourth, and Fourteenth Amendment violations. Doc. 1 at 2. Section 1983 provides that "[e]very person who, under color of [state law,]

subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. It creates no substantive rights but merely provides a mechanism for enforcing a right conferred by the Constitution or a federal statute. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002); *see also Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166, 174–75 (2023).

Hulett makes several assertions related to his Section 1983 claim. He alleges that each of the individual defendants personally violated his constitutional rights, that the defendants conspired to violate his rights, and that Johnson County is liable for the alleged violations because they occurred pursuant to an official policy or custom. *See generally* Doc. 17. None of Hulett's arguments have merit.

### 1

The individual defendants invoke qualified immunity in response to Hulett's claims. Doc. 17 at 4–6. Qualified immunity attempts to balance competing interests. Suits against government actors allow those wronged by government misconduct a method of redress. *See Anderson v. Creighton*, 483 U.S. 635, 638 (1987) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 814 (1982)). But non-meritorious suits exact a high cost from society and government officials by unduly interfering with the discharge of official duties. *See id.*; *see also Horstkoetter v. Dep't of Pub. Safety*, 159 F.3d 1265, 1277 (10th Cir. 1998). So government officials performing discretionary duties are immune from suit when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable official would have been aware. *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *see also Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (recognizing municipalities may not rely on their officers' entitlement to qualified immunity). Whether an official is immune turns on the objective reasonableness of the official's actions, considering the laws clearly established at the time the official acted. *See Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012). Objective reasonableness is not an exacting standard; qualified immunity protects all but the plainly incompetent or those who knowingly violate the law. *See White v. Pauly*, 580 U.S. 73, 79 (2017); *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

The analytical framework for the invocation of qualified immunity at the Rule 12 stage is settled. *See, e.g.*, *City of Tahlequah, Okla. v. Bond*, 595 U.S. 9, 12 (2021) (per curiam); *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021) (per curiam). First, the complaint must allege conduct that,

assuming the allegations are true, violates the Constitution or laws of the United States. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). Second, the law must have been clearly established at the time of the alleged conduct such that the defendant had fair notice that his or her conduct was unlawful. *See District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018). If both inquiries are answered in the affirmative, the motion to dismiss must be denied. But, if the answer to either is no, the defendant is entitled to judgment as a matter of law. *Hemry v. Ross*, 62 F.4th 1248, 1253 (10th Cir. 2023).³

Hulett asserts that the defendants violated his First, Fourth, and Fourteenth Amendments. Doc. 1 at 2. But he has not plausibly alleged that the defendants' conduct violated the Constitution or laws of the United States, so the defendants are entitled to qualified immunity.⁴

**a.** Hulett first alleges that the defendants retaliated against him for engaging in conduct protected by the First Amendment. Doc. 1 at 2. Construed generously, Hulett alleges that the law-enforcement defendants unlawfully arrested, detained, and otherwise mistreated him after or while he engaged in activity that the First Amendment protects. *Id.* at ¶ 9. Specifically, he alleges that the defendants mistreated him after he exercised his First Amendment right to visit a public library and express statements "to the effect of 'This is a free Nation!' and other similar words." *Id.* And regarding the emergency medical technicians, Hulett alleges that Hannah Foster falsified his medical records and snatched a blood-pressure cuff off his arm because he did not sign a consent form. *Id.* The other technician, Nathan Stavig, allegedly

---

³ Courts have discretion to address the inquiries in any order, as courts must "think carefully before expending 'scarce judicial resources' to resolve difficult and novel questions of constitutional or statutory interpretation that will 'have no effect on the outcome of the case.'" *al-Kidd*, 563 U.S. at 735 (quoting *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)); *Kisela v. Hughes*, 584 U.S. 100, 103–04 (2018).

⁴ And, even if he had, Hulett has not identified any law that clearly established that the defendants' conduct was unlawful. *VDARE Found. v. City of Colorado Springs*, 11 F.4th 1151, 1175 (10th Cir. 2021) (declining to reach the second prong of qualified immunity regarding clearly established law after finding that the plaintiff could not meet its burden to plausibly allege a constitutional violation); *Quinn v. Young*, 780 F.3d 998, 1013 (10th Cir. 2015) (noting that the plaintiff has the burden to identify clearly established law to defeat an officer's assertion of qualified immunity).

threatened to call the police because Hulett was expressing statements related to the legal obligations of emergency medical professionals. *Id.*

Hulett's allegations fall short. To state a First Amendment retaliation claim, he must show three things. One, that he "was engaged in constitutionally protected activity." *Irizarry v. Yehia*, 38 F.4th 1282, 1288 (10th Cir. 2022) (quoting *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000)). Two, that "the defendant's actions caused [him] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity." *Id.* And three, that "the defendant's adverse action was substantially motivated as a response to [his] exercise of constitutionally protected conduct." *Id.*

Even assuming Hulett engaged in protected activity, he has not plausibly alleged the second element of a retaliation claim—that the defendants retaliated against him *because* he engaged in that activity. Most of Hulett's allegations are simply conclusory statements that the defendants retaliated against him for engaging in protected expression. *See* Doc. 1 at ¶ 9. For example, Hulett states: "The plaintiff asserts retaliation in that his speech was suppressed, not accepted, and resulted in retaliation. . . ." *Id.* at 1. These are the exact kind of conclusory allegations that cannot be considered. *See VDARE Found. v. City of Colorado Springs*, 11 F.4th 1151, 1172–73 (10th Cir. 2021) (affirming the dismissal of a First Amendment retaliation claim that including nothing more than bare conclusions without any facts suggesting why or how the defendant' conduct would have chilled a person of ordinary firmness from engaging in protected activity); *see also Harrell v. Lira*, No. 24-8011, 2025 WL 251832, at *3 (10th Cir. Jan. 21, 2025) (affirming dismissal of a pro se plaintiff's First Amendment retaliation claim because the plaintiff failed to allege specific facts showing that the government officials retaliated against him because he exercised his constitutional rights).

Having disregarded Hulett's conclusory allegations, all that remains are Hulett's statements that the alleged constitutional violations happened while or soon after Hulett engaged in protected activity. Hulett states, for example, that the law-enforcement defendants "unlawfully detained, battered, searched and arrested" him . . . *after* Mr. Hulett engaged in expression protected by the First Amendment, exclaiming words to the effect of 'This is a free Nation!' and other similar words." Doc. 1 at ¶ 9 (emphasis added). These allegations are insufficient to plausibly allege the retaliatory motive that the First Amendment requires. *See Trant v. Oklahoma*, 754 F.3d 1158, 1170 (10th Cir. 2014)

11

("Temporal proximity between the protected speech and the alleged retaliatory conduct, without more, does not allow for an inference of a retaliatory motive."); *see also Guy v. Lampert*, 748 F. App'x 178, 181 (10th Cir. 2018) (affirming the dismissal of a First Amendment retaliation claim where the plaintiff did not plead anything more than temporal proximity and conclusory allegations because such facts were insufficient to support a plausible inference of retaliatory motive).

Hulett's claim against Foster and Stavig is subject to dismissal for an additional reason. Specifically, he has not alleged facts that would satisfy the third element of a First Amendment retaliation claim—that the defendants' conduct would chill a person of ordinary firmness from engaging in protected activity. Hulett states that Foster placed inaccurate information in his medical records and snatched a blood-pressure cuff off his arm, and that Stavig threatened to call the police and laughed at him when they arrived at the hospital. Doc. 1 at ¶ 9. These allegations, even if true, would not chill the actions of a person of ordinary firmness from continuing to engage in the type of activity Hulett was engaged in—e.g., visiting a public library, making statements about medical professionals' legal obligations, and expressing things like "This is a free Nation!" *See Smith v. Plati*, 258 F.3d 1167, 1177 (10th Cir. 2001) (finding that restrictions on a plaintiff that made it more difficult for him to publish an internet site would not affect an ordinary person's ability to maintain a website); *Eaton v. Meneley*, 379 F.3d 949, 955–56 (10th Cir. 2004) (finding that a person of ordinary firmness would not be chilled from continuing to criticize a sheriff's conduct after the sheriff ran a background check on them for doing so); *Benavidez v. Howard*, 931 F.3d 1225, 1233 (10th Cir. 2019) (noting that being named as a defendant in a lawsuit or being subject to a protective order would not chill a person of ordinary firmness from continuing to engage in protected speech).

**b.** Hulett next asserts a Fourth Amendment claim against the defendants. Doc. 1 at 2. That claim has two facets. One is that Hulett's allegation that the law-enforcement defendants arrested him without probable cause. *Id.* at ¶ 9. The other is that the same defendants applied excessive force against him during that arrest. *Id.*

First, Hulett has not plausibly alleged that the defendants arrested him without probable cause. A Fourth Amendment false-arrest claim requires a plaintiff to allege facts that establish both that a seizure occurred and also to permit the conclusion that the seizure was unreasonable. *Thomas v. Durastanti*, 607 F.3d 655, 663 (10th Cir. 2010). An

arrest constitutes an unreasonable seizure if "the arresting officer[s] acted in the absence of probable cause that the person had committed a crime." *Cronick v. Pryor*, 99 F.4th 1262, 1268 (10th Cir. 2024) (quoting *Kaufman v. Higgs*, 697 F.3d 1297, 1300 (10th Cir. 2012)).

Hulett repeatedly states that the law-enforcement defendants unlawfully arrested, seized, searched, and detained him, among other things. *See* Doc. 1 at ¶ 9. These allegations are conclusory statements containing no facts suggesting that an unreasonable search or seizure occurred. As a result, Hulett failed to allege facts that establish not only that he was seized, but also to permit the conclusion that the seizure—his arrest—was unreasonable. *See Thomas*, 607 F.3d at 663; *Smith v. Plati*, 258 F.3d 1167, 1176 (10th Cir. 2001) (affirming the dismissal of a complaint that contained conclusory allegations of a false arrest because the plaintiff "failed to allege sufficient facts to support the pleading requirements for an unconstitutional detention").

Second, Hulett's excessive-force claim fails. The Fourth Amendment protects an arrestee's "right to be free from excessive force during an arrest if the officer's actions were not 'objectively reasonable' in light of the facts and circumstances confronting him." *McCowan v. Morales*, 945 F.3d 1276, 1283 (10th Cir. 2019) (citing *Est. of Ceballos v. Husk*, 919 F.3d 1204, 1213 (10th Cir. 2019)). It is objectively reasonable for officers to use some force in the course of an arrest, like handcuffing the arrestee or placing him or her into a patrol vehicle. *Cortez v. McCauley*, 478 F.3d 1108, 1128 (10th Cir. 2007); *see also Graham v. Connor*, 490 U.S. 386, 396 (1989). When an excessive-force claim "includes a challenge to the '[m]anner or course of handcuffing,'" the plaintiff must show not only that the officers' use of force was unreasonable, but also that he or she suffered "some non-deminimis actual injury." *Donahue v. Wihongi*, 948 F.3d 1177, 1196–97 (10th Cir. 2020).

Hulett's only allegation to support his excessive-force claim is that the officers "painfully contorted and applied pressure to his wrist and shoulder, causing those areas of his body significant injury." *Id.* at ¶ 12. He also states that those injuries caused him to have a panic attack. *Id.* Hulett's allegations are insufficient to permit the conclusion that the officer applied unreasonable force beyond the type of force that "an arrest or investigatory stop necessarily carries with it." *Graham*, 490 U.S. at 396; *Cortez*, 478 F.3d at 1128 (finding that the use of force to grab the arrestee and place him in the patrol car was objectively reasonable); *see also Segura v. Jones*, 259 F. App'x 95, 103 (10th Cir. 2007) (concluding that an officer's use of force was reasonable when the

officer pushed an arrestee against the wall while arresting her). Nor do his statements that he had a panic attack and "significant injury" support that Hulett suffered the type of non-deminimis injury necessary to state a Fourth Amendment claim based on an officer's use of excessive force while handcuffing an arrestee. *See Donahue v. Wihongi*, 948 F.3d 1177, 1196–97 (10th Cir. 2020) (collecting cases that found no handcuffing injury sufficient to implicate the Fourth Amendment where there were red marks for days afterwards or superficial abrasions).

Finally, to the extent Hulett's Fourth Amendment claim implicates the emergency medical technicians, it fails. Hulett makes no allegations that Foster and Stavig—the medical team summoned to the scene to provide Hulett medical care—searched or seized him or his property, much less that they did so unreasonably. *See Bowman v. Friedman*, No. 23-2115, 2024 WL 1298883, at *3 (10th Cir. Mar. 27, 2024) (affirming dismissal of a pro se plaintiff's complaint where she did not allege that a seizure occurred).

**c.** Hulett's third constitutional claim implicates the Fourteenth Amendment. Doc. 1 at 2. The defendants argue that Hulett's Fourteenth Amendment claims fail because he relies on the same allegations of government conduct that his First and Fourth Amendment claims cover—that the defendants unlawfully detained and arrested him without probable cause and retaliated against him for engaging in constitutionally protected expression. Doc. 17 at 10. Once again, the defendants' arguments are sound.

The Fourteenth Amendment's due-process protections "are not a fallback to protect interests more specifically addressed" by other constitutional amendments. *Becker v. Kroll*, 494 F.3d 904, 918–19 (10th Cir. 2007). Indeed, the Fourteenth Amendment is not a font of tort law. *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 768–69 (2005) (quoting *Parratt v. Taylor*, 451 U.S. 527, 544 (1981)). Rather, where another constitutional amendment "provides an explicit textual source of constitutional protection" against a specific type of government conduct, that specific amendment guides the analysis rather than the Fourteenth Amendment's substantive due process component. *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). That is the case here: The First and Fourth Amendments cover the governmental conduct that Hulett alleges, so his Fourteenth Amendment claims fail as a matter of law. *See Shimomura v. Carlson*, 811 F.3d 349, 362 (10th Cir. 2015) (finding that the Fourteenth

Amendment was not the appropriate source for an individual's allegations that the government deprived him of his physical liberty because the Fourth Amendment covered that conduct); *see also Kiser v. Kamdar*, 831 F.3d 784, 791 (6th Cir. 2016) (applying *Graham* and *Albright* to conclude that the Fourteenth Amendment's substantive due process protection was not the appropriate source for a First Amendment free-speech claim).

**d.** Hulett also alleges that the defendants conspired among one another to violate his constitutional rights. Doc. 1 at 2. Not so. There is no free-standing conspiracy claim under Section 1983. *See Dixon v. City of Lawton*, 898 F.2d 1443, 1449 n.6 (10th Cir. 1990). Instead, conspiracy in the context of Section 1983 is a means by which multiple actors can be liable for the same underlying constitutional violation. *Id.* Because Hulett did not plausibly allege an underlying constitutional violation, he has not stated a claim for relief based on conspiracy liability. *See Hinkle v. Beckham Cnty. Bd. of Cnty. Comm'rs*, 962 F.3d 1204, 1231 (10th Cir. 2020) (affirming the dismissal of a Section 1983 claim that defendants conspired to make a false arrest because the plaintiff failed to plausibly allege the underlying constitutional violation of a false arrest).

**2**

Hulett also brought his Section 1983 claim against Johnson County. Doc. 1 at 2. In particular, he states that the individual defendants violated his constitutional rights pursuant to a municipal policy or custom and that Johnson County is liable for failing to train and supervise its employees. *Id.* at 2, ¶¶ 5–9. Hulett's arguments fail because, as more fully explored above, none of Johnson County's employees violated Hulett's constitutional rights. *See supra* Section II.C.1. This precludes imposing liability on the municipal entity. *See Frey v. Town of Jackson*, 41 F.4th 1223, 1239 (10th Cir. 2022) (dismissing a municipal liability claim because the plaintiff did not allege an underlying constitutional violation and therefore could not "recover simply because some municipal policy might have authorized an officer to violate the Constitution"); *Crowson v. Wash. Cnty. Utah*, 983 F.3d 1166, 1187 (10th Cir. 2020) (noting that failure-to-train liability requires an underlying constitutional violation by one of the municipality's employees).

**D**

Hulett brings several state-law claims against the defendants.[5] Doc. 1 at 2, ¶¶ 7–12. Those claims fail for two independent reasons.

**1.** The defendants contend that Hulett failed to plead a mandatory condition precedent before filing suit against a municipality and its employees. Doc. 17 at 11–12. Under Kansas law, a plaintiff must provide notice before he or she sues a Kansas county or its employees. Kan. Stat. Ann. § 12-105b(d). Kansas courts treat this requirement as jurisdictional. *See Whaley v. Sharp*, 343 P.3d 63, 67 (Kan. 2014) (recognizing that notice "is required before a court has subject matter jurisdiction over a tort claim against a municipality"). So, too, do Kansas federal courts applying that law. *See, e.g.*, *Von Busch v. Giordano*, No. 23-4111, 2025 WL 238921, at *4 (D. Kan. Jan. 17, 2025).

To establish jurisdiction, the plaintiff must affirmatively plead that he or she complied with that requirement. *See Wanjiku*, 173 F. Supp. 3d at 1236 (explaining that Section 12-105b's notice requirement is a condition precedent to filing suit against a municipality that must be pled under Fed. R. Civ. P. 9(c)). Hulett' complaint, however, fails to allege compliance with Kansas's notice requirement before filing suit against Johnson County and its employees. Dismissal is therefore required. *Garman v. Campbell Cnty. Sch. Dist. No. 1*, 630 F.3d 977, 986 (10th Cir. 2010) (affirming dismissal based on the failure to plead a state-law

---

[5] Hulett listed Medicare fraud as one of his state-law claims. Doc. 1 at 2. It is unclear what cause of action Hulett is referring to, even assuming he is attempting to bring a federal claim. That alone is enough to dismiss Hulett's fraud claim. *See Firstenberg v. City of Santa Fe*, 696 F.3d 1018, 1024 (10th Cir. 2012) (explaining that a pro se plaintiff's complaint cannot be rewritten "to include claims that were never presented" even though pro se litigants' pleadings are construed liberally). In any event, to the extent that Hulett attempts to bring any type of fraud claim against the defendants, his sole allegation that Foster and Stavig falsified his medical records does not amount to the specificity required by Federal Rule of Civil Procedure 9(b). *See Andrews v. Heaton*, 483 F.3d 1070, 1076 (10th Cir. 2007) (finding that a pro se plaintiff's "conclusory allegations of fraud failed to come anywhere near satisfying the specificity requirements" of Rule 9(b) even when construed generously); *United States ex rel. Sorenson v. Wadsworth Bros. Constr. Co.*, 48 F.4th 1146, 1156 (10th Cir. 2022) (finding allegations of fraud insufficient where they did not specifically state who engaged in fraudulent activity and what the allegedly false representations were).

condition precedent when the plaintiff did not request to file an amended complaint); *See Rodden*, 2025 WL 1555033, at *4 (dismissing Hulett's claims for failure to plead compliance with Section 12-105b).

**2.** Even if Hulett had plausibly alleged compliance with Section 12-105b, dismissal of his state-law claims would be proper because all of Hulett's federal claims have been dismissed. Federal courts "should normally dismiss supplemental state law claims after all federal claims have been dismissed, particularly when the federal claims are dismissed before trial." *I Dig Tex., LLC v. Creager*, 98 F. 4th 998, 1012 (10th Cir. 2024) (citations omitted); *see also Foxfield Villa Assocs., LLC v. Robben*, 967 F.3d 1082, 1102–03 (10th Cir. 2020) (affirming dismissal of "copious state law issues" on supplemental jurisdiction grounds where the federal claim had been dismissed). This conclusion acknowledges that "notions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary." *Brooks v. Gaenzle*, 614 F.3d 1213, 1230 (10th Cir. 2010) (quoting *Ball v. Renner*, 54 F.3d 664, 669 (10th Cir. 1995)) (alteration omitted). Because no federal claims remain, Hulett's supplemental claims will be dismissed too.

### III

For the foregoing reasons, Defendants' Motion to Dismiss, Doc. 16, is GRANTED.

It is so ordered.

Date: November 26, 2025        s/ Toby Crouse
                               Toby Crouse
                               United States District Judge